***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties in a Pre-Trial Agreement that was admitted into the record and marked as Stipulated Exhibit (1) as:
 STIPULATIONS
1. Plaintiff was employed by defendant Lucent Technologies/Western Electric in Charlotte, North Carolina, for the periods of June 11, 1956, to September 20, 1958; March 24, 1959, to September 24, 1961; and from August 13, 1962, to January 3, 1969.
2. Plaintiff was employed by Boone Building and Drilling in Monroe, North Carolina, from 1985 to 1989.
3. Defendant Lucent Technologies is responsible for the liability, if any, of Western Electric.
4. Subject to defendant's arguments regarding the statute of limitations, the parties are subject to, and bound by the provisions of the North Carolina Workers' Compensation Act, defendant employing the requisite number of employees at all relevant times herein.
5. At the hearing before the Deputy Commissioner, the parties submitted the following exhibits:
a. Medical Records of plaintiff, which were admitted into the record, and marked collectively as Stipulated Exhibit (2);
b. All Discovery Responses, which were admitted into the record, and marked collectively as Stipulated Exhibit (3);
c. Abatement Records, to which defendant objected to the initial four pages, which were admitted into the record by the Deputy Commissioner over said objection, and marked collectively as Stipulated Exhibit (4);
d. A Social Security Earnings Report, and Disability Application, which were admitted into the record, and marked as Stipulated Exhibit (5); and,
e. A Packet of Industrial Commission Forms and Documents, which were admitted into the record, and marked collectively as Stipulated Exhibit (6).
 *********** EVIDENTIARY MATTERS
During a pre-trial conference call, plaintiff and defendant Lucent Technologies agreed to have prior defendants McCall Brothers, Inc., and Comptrust, its carrier, dismissed as party-defendants, and an appropriate Order was then entered by Deputy Commissioner Houser.
At the hearing before the Deputy Commissioner, plaintiff offered evidence regarding a claim for kidney cancer in addition to his claims for asbestosis, pleural disease, and colon cancer. Defendant opposed the inclusion of plaintiff's kidney cancer claim in this matter. Previously, on October 1, 1996, plaintiff filed his initial claim for asbestosis, then filed an amended Industrial Commission Form 18B regarding his claim for colon cancer on January 26, 2000. The parties were given the opportunity subsequent to the hearing to brief this issue. Following submission of said briefs, the Deputy Commissioner found that plaintiff had made a prima facie showing that he received notice on November 15, 1999, from a competent medical authority that his conditions, including his kidney cancer, were causally related to asbestos exposure. Because that date is within the limitation set forth in N.C. Gen. Stat. § 97-58, the Deputy Commissioner ruled, and the Full Commission hereby affirms, that plaintiff's claim for kidney cancer would be considered as part of this matter.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was sixty-six years of age, having been born on August 25, 1935. During the majority of plaintiff's working career, and in addition to other jobs he has held, plaintiff owned and operated various well drilling businesses.
2. Prior to working for defendant, plaintiff worked for Therrell Doster from 1953 to 1954, a company involved in industrial insulation of pipes and boilers. While working for Therrell Doster, plaintiff's duties included installing insulation several days each week, with most of the insulation containing asbestos. While working in this capacity, plaintiff used his hands to mix dry asbestos mud with water before it was applied. Additionally, plaintiff worked with asbestos insulation rolls, which he would cut with a saw in order to wrap them around pipe.
3. For the period of 1956 to 1968, plaintiff worked for Western Electric, which was subsequently purchased by defendant Lucent Technologies. During the period of his employment with defendant, plaintiff built and repaired teletype units and switchboards. Initially, plaintiff worked at defendant's facility on Atando Avenue in Charlotte.
4. At the Atando Avenue warehouse, steam pipes ran throughout the building at approximately nine feet overhead. At the hearing, plaintiff testified that, based upon his experience in the insulation industry, he was able to determine that the insulation at this facility contained asbestos. In addition to plaintiff's testimony, documentary evidence was submitted establishing that insulation at the Atando Avenue facility was asbestos-containing insulation. Plaintiff further testified that the insulation in the warehouse area where he worked was in disrepair, and that this area was dusty. Plaintiff's testimony regarding the Atando Avenue facility is accepted as credible by the undersigned.
5. In 1958, plaintiff's employment with defendant-employer moved him to a building on North Tryon Street, also in Charlotte. This building contained a boiler, and insulated steam pipes that ran overhead and down some walls. At each of plaintiff's workstations, there were pipes running overhead and down the walls. These pipes were covered with asbestos-containing insulation.
6. Regarding the North Tryon Street facility, plaintiff was able to determine that the insulation contained asbestos due to his experience in the insulation industry. Plaintiff testified the some of the asbestos insulation was in disrepair at some of his workstations, and that he had observed repairs being made on the asbestos-containing insulation. The disrepair of which plaintiff testified was in part due to harmonic damage, which is damage caused by vibration in the pipes. Such disrepair was also caused by steam running through the pipes, which caused the pipes to expand and contract. Plaintiff also testified that air currents in the facility disturbed the asbestos-containing insulation. Additionally, plaintiff cleaned his work area on a daily basis.
7. When plaintiff's employment with defendant moved him into the North Tryon facility, the building was new. Nonetheless, an Environmental Property Transfer Assessment performed in 1989 reflects that asbestos-containing insulation was present in the North Tryon Facility during the period in which plaintiff worked in that building. Thus, based upon the totality of the record, the Full Commissioner affords little weight to the testimony of plaintiff's coworkers through whom defendant attempted to establish that the asbestos insulation in the North Tryon facility was not damaged.
8. Plaintiff was, up until the time he left his employment with defendant in 1975, injuriously exposed to the hazards of asbestos in excess of thirty working days, or parts thereof, within seven consecutive months. Plaintiff was not injuriously exposed to the hazards of asbestos through employment subsequent to that time. Accordingly, plaintiff was last injuriously exposed to the hazards of asbestos while employed by defendant.
9. Plaintiff's claims for asbestosis, pleural disease, colon cancer, and kidney cancer were filed within two years of having been informed by a competent medical professional of the possible work-related cause of these conditions.
10. Dr. Arthur L. Frank, Dr. Murray W. Turner, and Dr. Carmine Dalto have each diagnosed plaintiff with asbestosis as a result of his employment with defendant.
11. Plaintiff's employment with defendant, and his exposure to asbestos, caused or significantly contributed to his pleural disease. Additionally, plaintiff's employment with defendant, and his exposure to asbestos, exposed him to an increased risk of developing pleural disease as compared to members of the general public not so employed.
12. Plaintiff's employment with defendant, and his exposure to asbestos, caused or significantly contributed to his kidney cancer. Additionally, plaintiff's employment with defendant, and his exposure to asbestos, exposed him to an increased risk of developing kidney cancer as compared to members of the general public not so employed.
13. Plaintiff's employment with defendant, and his exposure to asbestos, caused or significantly contributed to his colon cancer. However, the evidence is insufficient upon which to find that plaintiff's employment with defendant exposed him to an increased risk of developing colon cancer as compared to members of the general public not so employed.
14. Although plaintiff has asbestosis, he is no longer employed in a position that causes harmful exposure to the hazards of asbestos.
15. Defendant's defense of this matter was reasonable, and was not based upon stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Because plaintiff's claims for compensation due to asbestosis, pleural disease, colon and kidney cancer were timely filed, he is not barred from pursuing said claims. N.C. Gen. Stat. § 97-58.
2. Plaintiff was, up until the time he left his employment with defendant in 1975, injuriously exposed to the hazards of asbestos in excess of thirty (30) working days, or parts thereof, within seven (7) consecutive months. N.C. Gen. Stat. § 97-57. Because plaintiff was not injuriously exposed to the hazards of asbestos through employment subsequent to that time, he was last injuriously exposed to the hazards of asbestos while employed by defendant. Id.
3. As the result of his employment with defendant, and his exposure to asbestos, plaintiff has contracted the occupational disease asbestosis. N.C. Gen. Stat. § 97-53(24).
4. Plaintiff's employment with defendant, and his exposure to asbestos, caused or significantly contributed to his pleural disease. N.C. Gen. Stat. § 97-53(13). Additionally, plaintiff's employment with defendant, and his exposure to asbestos, exposed him to an increased risk of developing pleural disease as compared to members of the general public not so employed. Id.
5. Plaintiff's employment with defendant, and his exposure to asbestos, caused or significantly contributed to his kidney cancer. N.C. Gen. Stat. § 97-53(13). Additionally, plaintiff's employment with defendant, and his exposure to asbestos, exposed him to an increased risk of developing kidney cancer as compared to members of the general public not so employed. Id.
6. Plaintiff's employment with defendant, and his exposure to asbestos, caused or significantly contributed to his colon cancer. N.C. Gen. Stat. § 97-53(13). However, the evidence is insufficient upon which to find that plaintiff's employment with defendant, and his exposure to asbestos, exposed him to an increased risk of developing colon cancer as compared to members of the general public not so employed. Id.
7. To recover under the provisions of N.C. Gen. Stat. § 97-61.5(b), a claimant must be "removed" from their employment. Austin v. ContinentalGeneral Tire, 354 N.C. 344, 553 S.E.2d 680 (2001). Because plaintiff is no longer employed in a position that causes harmful exposure to the hazards of asbestos, he need not be "removed" from his employment. Id.
Accordingly, plaintiff is not entitled to the statutorily provided 104 weeks of compensation. Id. N.C. Gen. Stat. § 97-61.5.
8. As the result of his compensable asbestosis, plaintiff is entitled to be paid $40,000.00 ($20,000.00 per lung) for the permanent injury to his lungs, which are each an important organ of the body. N.C. Gen. Stat. § 97-31(24).
9. As the result of his compensable kidney cancer, plaintiff is entitled be paid $20,000.00 for the permanent injury to his kidney, which is an important organ of the body. N.C. Gen. Stat. § 97-31(24).
10. As the result of his compensable asbestosis, pleural disease, and kidney cancer, plaintiff is entitled have defendant pay for all related medical expenses incurred, or to be incurred. N.C. Gen. Stat. §§ 97-25, and 97-25.1.
11. Because defendant's defense of this matter was reasonable, and was not based upon stubborn, unfounded litigiousness, plaintiff is not entitled to recover attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff in lump sum compensation in the amount of $40,000.00 ($20,000.00 per lung) for the permanent injury to his lungs, each an important organ, due to asbestosis. Having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendant shall pay to plaintiff $20,000.00 for the permanent injury to his kidney, an important organ, due to his asbestos-related kidney cancer. Having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
3. Defendant shall pay to plaintiff's counsel a reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein. Having accrued, this fee shall be deducted from the amounts due plaintiff, and paid in lump sum directly to plaintiff's counsel.
4. Defendant shall pay the costs.
This 22nd day of July 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER